Daniel, J.
 

 The bill is to set aside and cancel a contract, made with Anselm and John Reed, for the purchase of a stock of goods and of a term in a store house, at the price of $2300, but, as the plaintiff says, actually worth but $1263. The plaintiff states that he is an illiterate man, and that, at the time the supposed contract was entered into by him, he was so very drunk that he did not know what he was doing —that, the next morning, when he got sober, and when he was informed by the defendant A. Reed what he had done, he proposed to rescind the said contract. But Reed refused and threatened him with the penalty of $2000, which they said was stipulated by a writing entered into to complete the contract, but whieh writing was unknown to the plaintiff. Being illiterate, and ignorant of business and of the law, without a friend to advise him, and under great fear and alarm of being entirely ruined by the enforcement of payment of the said penalty of $2000, he, in compliance with what the defendant stated to him had been the contract, executed to them a bill of sale for three slaves, priced at $900, a bond for $1400, and a deed of trust to J. J. Reed, as trustee, upon his lands and other property, to secure the payment of the said bond, when it became due — and he took possession of the store. For and on account of the aforesaid fraudulent contrivances, the plaintiff, by his bill, prays, that the said contract may be decreed to be rescinded, his slaves returned, and the bond and deed of trust cancelled; and that the defendants be compelled to take back their goods. The bill also prayed an injunction to restrain the defendants from negotiating the bond, or selling the plaintiff’s property under the deed of trust.
 

 
 *420
 
 The defendants answer. A Reed says that he was the acting partner in the firm — that the plaintiff came to the store on the 14th day of April, 1839 — that he proposed to sell this defendant a negro woman and her two children for $900, which this defendant refused, unless he would take goods or promissory notes. The plaintiff then asked the defendant what he would take for his goods and the lease oí the store house, as they stood. Defendant refused to sell them in that way; telling the plaintiff that he could not accurately estimate the value by several hundred dollars; that the goods had never been invoiced since the business commenced, 164 months before. The plaintiff then took an examination of the contents of the shelves, and in the space under and behind the counter. He said he wished to set his son up in the .business; it would be a good school for him; and, if he purchased, he should place his son there. After chaffering for .a length of time, he offered to let the plantiff have the goods and lease of the store house for $2300, and take his three negroes in part payment at $900, and his bond and security for $1400, payable at the expiration of the lease. Defendant stated to the plaintiff, that it was a haphazard business with him, and that he would prefer to take an inventory of the goods — that the plaintiff should have them at 10 per cent, .on the cost. The plaintiff, after much hesitation and again looking through the store, agreed to accept the offer. The terms of the bargain were then distinctly recited by the defendant, and the plaintiff gave his full assent thereto. The plaintiff then insisted that the defendant should draw up in writing a memorandum of the agreement, in which they should bind themselves for its performance. Defendant proposed to put it off until the next morning, but the plaintiff insisted that it should be then done. He drew the memorandum in which each party was bound for its fulfilment in the penal sum of $2000, which they both signed, and J. J Reed became the witness. The defendants, A. Reed and J. Reed, aver that the plaintiff was then sober, that drunkenness was not exhibited either in his conversation or in his actions, before or after the conclusion of the contract — that the plaintiff, on being invited, remained all night; he slept
 
 *421
 
 in a room with J. J. Reed, and in the morning commenced a conversation about the trade. The defendant A. Reed denies that the plaintiff, that morning or for weeks after, expressed to him any dissatisfaction with his said purchase, but avers that he went to the store and commenced selling. The plaintiff in the morning proposed that John Reed, the other partner, should be sent for and the writings then completed, which was accordingly done, and the writings completed and executed. He avers that the plaintiff was then sober, nor was he impelled by any species of duress or fraud to complete the said contract, but he did the same willingly and eagerly. A. Reed says that he then destroyed the memorandum made the night before: the plaintiff saying it was then of no further use, after he had executed the writings, which had been thus formally drawn up — that the plaintiff took possession of the store and goods, and, on the 19th day of the same month, again purchased of the defendants an addditional stock of molasses and iron, which the defendants had in another house — that the plaintiff brought and delivered the slaves according to the contract. The defendants deny that the plaintiff is illiterate, but say he signs his name as well, and has as good an education, as common laboring men. They deny that he is a drunkard or ignorant, but say that he possesses ordinary shrewdness, and, is keen at a bargain. The defendants say they cannot tell with certainty' the value and quantity of the goods; but that John Reed, on his arrival in the morning, said to his son (A. Réed)
 
 “
 
 you have made a bad bargain;” and the defendant John says that he then thought so, and yet believes so. Defendants aver that it was six weeks after the contract, when the plaintiff and an ignorant and awkward clerk, ignorant of prices, made an inventory — that it was after the plaintiff had taken possession and been trading for some six weeks, that he first proposed to rescind the contract. The defendant J. J. Reed, the witness and trustee, in his answer, denies that the plaintiff was intoxicated at the time of the contract. The defendants deny all fraud and combination.
 

 This answer was filed at Fall Term, 1840. The plaintiff then replied. Afterwards in the vacation, to wit, on the
 
 *422
 
 oí December, 1840, the plaintiff petitioned a Judge to grant him a writ of injunction to restrain the defendant from n , . . selling under the deed of trust, and the injunction was grant-e(jt At Spring Term, 1841, the defendants moved to dissolve the injunction, and the court did dissolve it, being of the opinion that the answers of the defendants denied the equity of the plaintiff’s bill. The court thereupon decreed that the defendants recover against the plaintiff and his surety Levin Moore the sum of $1000, the amount of the injunction bond. From which decree, with the consent of the court, the plaintiff appealed.
 

 On a motion to dissolve an injunction, usually the court can look at nothing but the answer, and the exhibits filed and.admitted by the answer. The plaintiff calls upon the defendant to testify whether the facts and circumstances stated in his bill are not true. If the defendants in their answer deny the facts and circumstances, which make the plaintiff’s case, the injunction of course must fall, as the proof fails'. We have examined the bill, answer and proceedings in this case, and must say, with the Judge, who decided below, that the answers of the defendants have denied all the facts and circumstances, which make up the equity of the plaintiff’s bill. But there is one part of the decree, which, we think, is erroneous: it is in decreeing $1000 against the plaintiff and his surety on the injunction bond. The act of Assembly (Rev. iSt. c. 32, s. 13) directs that, on a dissolution of an injunction, the bond shall be proceeded on in the same manner and under the same rules and restrictions, that bonds given upon appeals from the County to the Superior Court are proceeded on.' It is obvious from the reference to appeals from the County Court, as well as from the antecedent sections of the act, that this provision can only apply to injunctions to restrain executions on judgments at law. There has been no judgment at law against the principal. The defenants’ remedy on the injunction bond is not by a motion under the statute, but at common law. The decree against the plaintiff and his surety for $ 1000 will be reversed; the residue of the decree dissolving the injunction is affirmed.
 

 We take the opportunity of remarking that the course
 
 *423
 
 which was pursued in this case of granting an injunction after bill and answer, upon a petition presented to a Judge in vacation, seems to us irregular. If any new matter had occurred, raising an equity to support an injunction, such matter should have been disclosed by a supplemental bill.
 

 This opinion will be certified to- the court below.
 

 Pee Curiam, Ordered accordingly.